**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| AMY M. BLACK )<br>)<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>JOANNE B. BARNHART, Commissioner of the )<br>Social Security Administration, )<br>)<br>**Defendant.** ) | Case No. 05-CV-112-PJC |

**ORDER**

Claimant, Amy M. Black, pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Claimant's application for disability benefits under the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, the Court **Reverses and Remands** the Commissioner's decision.

**Claimant's Background**

Claimant was born on October 13, 1974, and was 30 years old at the time of the ALJ's decision. (R. 45). She has a high school equivalent education, with vocational training as a nurse's assistant. (R. 47). Claimant worked several jobs, with limited duration, including that of bank teller, nurse's assistant, and pre-verifier. (R. 48-49). Claimant alleges an inability to work

beginning May 31, 2002, due to bipolar depression, fibromyalgia, pinched nerve, lower back and right shoulder pain, and anxiety disorder. (R. 47, 94-126). She also claims to suffer from post-traumatic stress disorder ("PTSD"), migraines, low blood pressure, anemia, muscle spasms, and obesity. (R. 50-54).

In July and September 2000, Black saw Stephen Wiseman, M.D. for complaints of anxiety and pain in her legs and back. (R. 143-44). At that time, Dr. Wiseman diagnosed Black with fibromyalgia. (R.144).

Black was treated at the Indian Healthcare Resource Center ("IHRC") from June 1, 1999 through April 29, 2004.[1] (R. 185-233, 273, 286). Records indicate that Black was diagnosed with fibromyalgia (R. 187-88, 196, 210), major depression (R. 187, 196-97, 202, 206, 209, 210, 273), bipolar I disorder (R. 188, 190-95, 198-202), and polysubstance dependency (R. 190-95, 197-202, 204, 206-09, 211-12). In June 2001 Black reported to her mental health therapist at IHRC that she was abusing her medications, had a history of drug abuse including alcohol, cannabis, cocaine, and barbiturates, had been hospitalized on three previous occasions for manic depression, and was sexually abused as a child. (R. 212). During the course of her treatment at IHRC, Black was prescribed the following medications: Cyclobenzaprine/Flexeril, Wellbutrin, Amidrine, Hydroxyzine, Zoloft, Flexeril, Depakote, Ultram, Lithium, Risperidone, and Trazodone. (R. 187-88, 190, 193, 195-96, 199, 202-03, 206, 210, 226-33, 275-76, 279-81, 284-86). The records also indicate that Black was not diligent in taking her medication and would often take herself off of some or all of her medication. (R. 190, 191, 194, 198-200, 204). She

---

[1] Medical records prior to 2001 are not relevant to this claim because they address prenatal and postpartum visits.

received counseling from IHRC from June 2001 through February 2002. (R. 191-95, 197-209, 211-12). Because Black frequently missed appointments, or arrived late for appointments with her mental health therapists, IHRC refused to schedule any more counseling appointments after March 12, 2002. (R. 189-90, 192-94, 205). On April 29, 2004, Robert Lawson, D.O., Black's primary care physician at the Center, noted that he doubted the diagnosis of fibromyalgia. (R. 273). He observed that although Black exhibited discomfort along the medial border of her right scapula, "trigger points in other areas failed to elicit any response." *Id*.

Black was admitted to St. John's Hospital on November 3, 2002, due to an overdose of Wellbutrin and Flexeril. (R. 146-51). The medical report indicates that Black took fifteen 150 mg tablets of Wellbutrin and fourteen to fifteen 10 mg tablets of Flexeril. (R. 148). Black's parents brought her to the emergency room after Black told her mother that she had "taken too much" of her medications. *Id*. Black's mother reported that Black had recently received a prescription for Wellbutrin but had not been on any medication recently and that Black was having marital problems and had reported trouble with sleeping. *Id*. Black left the hospital against medical advice before she was seen by psychiatric staff.

On June 25, 2003, Black underwent a Comprehensive Internal Medical Examination by Moses A. Owoso, M.D. (R. 152-158). At this examination, Black's chief complaint was of back pain that began in the upper back and extended to the right subscapular region. (R. 152). Dr. Owoso's clinical impression was that Black was moderately obese, weighing 202 pounds at 65 inches tall. (R.153-54). Otherwise, functioning and range of motion in all her major joints, including the right shoulder, were normal; strength in her upper and lower extremities was 5/5 bilaterally; her grip was 5/5 bilaterally; and spine alignment was normal. (R. 153-58).

Claimant also underwent a psychological consultative evaluation that same date by Michael Morgan, Ph.D. (R. 159-64). Black's chief complaints at this evaluation were that of "bipolar, fibromyalgia, panic disorder, and memory problems." (R. 159). The record indicates that "Claimant scored a 30 on the Mini-Mental State Exam (Folstein), indicating no impairment in concentration or memory at the time of the exam." (R. 161). Black's verbal function was normal, while her mood and affect were mildly depressed. *Id*. Dr. Morgan noted that Black presented signs consistent with PTSD related to childhood abuse, and that she reported signs and symptoms consistent with borderline personality disorder, "including unstable self-image, dangerously impulsive behaviors, recurrent suicidal behavior, self-mutilating behavior, affective instability, chronic feelings of emptiness, inappropriate and intense anger, and transient, stress-related paranoid ideation:" (R. 162). Dr. Morgan found Claimant to have a normal thought process in terms of productivity, a high-average level of intelligence, good judgment, and the ability to live independently and manage funds. *Id*. Dr. Morgan diagnosed Black with chronic PTSD, major recurrent depressive disorder in partial remission, and alcohol dependence with physiological dependence in sustained full remission on Axis I[2]; borderline personality disorder on Axis II; fibromyalgia, migraine headaches, and obesity (by medical report) on Axis III; unemployment on Axis IV; and a current Global Assessment Function ("GAF") of 55-60 on

---

[2]    There are five assessments in the DSM-IV multiaxial system: Axis I pertains to Clinical Disorders, Axis II to Personality Disorder, Axis III to General Medical Conditions; Axis IV to Psychosocial and Environmental Problems; and Axis V to Global Assessment of Functioning. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR), 27-36 (4th rev. ed. 2000).

Axis V.[3]  (R. 163).  He stated that Black's depression "seems partially controlled with medication at this time" and "[w]ith two to three years of psychotherapy, it is likely she could be restored to a normal level of functioning." *Id*.

From April 6, 2004 to December 9, 2004, Black received psychological treatment at Family and Children Services ("F&CS").[4] (R. 252-72, 287-303).  When evaluated initially, Claimant was diagnosed with Bipolar I disorder, depressed, borderline personality disorder and a GAF of 42. (R. 271).  Claimant was prescribed the following medications: Tegretol, Seroquel, and Wellbutrin, Zyprexa and Depakote. (R. 252, 256-57, 298-303, 306-07, 311).  In addition to medication, F&CS incorporated counseling with stated objectives as part of Claimant's treatment program. (R. 262-71). Claimant received counseling treatment from F&CS through October 2004. (R. 254, 258-61, 288-97, 308-10).  The records from F&CS note Black's continued difficulty with sleep, depressed mood, audio and visual hallucinations when manic, and mood swings. (R. 252, 254-61, 288-303, 308-10).

In August and October 2003, DDS psychologists, from their review of the records, diagnosed Black with depressive syndrome, likely borderline personality disorder, and a history

---

[3]  The GAF score represents Axis V of a Multiaxial Assessment system. DSM-IV-TR at 32-36. A GAF score is a subjective determination which represents the "clinician's judgment of the individual's overall level of functioning." *Id*. at 32.  The GAF scale is from 1-100. A GAF score between 21-30 represents "behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment . . . or inability to function in almost all areas." *Id*. at 34.  A score between 31-40 indicates "some impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Id*.  A GAF score of 41-50 reflects "serious symptoms . . . or any serious impairment in social, occupational, or school functioning."  *Id*. And scores of 51-60 indicate moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *Id*.

[4]  F&CS records from October through December 2004 were submitted to the Appeals Council. (R. 306-10).

of bipolar disorder and substance abuse, and determined that she had moderate difficulties limitation in social functioning, mild limitation in concentration, persistence or pace, no limitation in her activities of daily living ("ADL"), and one or two episodes of decompensation of extended duration. (R. 170-83, 235-51). One of the consulting psychologists noted that Black would "require close supervision if serving in [a] role [dealing] with the general public." (R. 168).

## Procedural History

On February 28, 2003, Black protectively filed for disability benefits under Title II, 42 U.S.C. § 401 *et seq.*, and for Supplemental Security Income ("SSI") benefits under Title XVI, 42 U.S.C. § 1381 *et seq*. (R. 94). Claimant's application for benefits was denied in its entirety initially and on reconsideration. (R. 82-83). A hearing before ALJ Gene Kelly, was held October 26, 2004, in Tulsa, Oklahoma. (R. 40-81). By decision dated November 18, 2004, the ALJ found that Claimant was not disabled at any time through the date of the decision. (R. 15-24). On January 4, 2005, the Appeals Council denied review of the ALJ's findings. (R. 5-7). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. §423(d)(1)(A). A Claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920. [5]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991).

Substantial evidence is such evidence "as a reasonable mind might accept as adequate to support a conclusion." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2002). In reviewing the decision of the Commissioner, the court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Id.* Nevertheless, the court examines "the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determines if the substantiality of the evidence test has been met." *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991).

---

[5] Step One requires the Claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.972. Step Two requires that the Claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520©, 416.920©. If the Claimant is engaged in substantial gainful activity (Step One) or if the Claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the Claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1. A Claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the Claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work. If the Claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the Claimant, taking into account her age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. §§ 404.1520, 416.920.

**Decision of the Administrative Law Judge**

The ALJ made his decision at the fifth step of the sequential evaluation process. He found that Black had severe impairments of depression, anxiety, panic, personality disorder, substance abuse, headaches, shortness of breath, low blood pressure, anemia, fibromyalgia, as well as problems with her back, shoulders, and hands, but none of the severe impairments met or medically equaled a listing level impairment. (R. 17, 22-23). He determined Black had the residual functional capacity ("RFC") for

> lifting and carrying no more than 20 pounds occasionally and 10 pounds frequently; standing and walking 6 hours in an 8-hour workday at 30 minute intervals, sitting 6 hours in an 8-hour workday at 1 hour intervals; and occasionally climbing, bending, stooping, squatting, kneeling, crouching, crawling, pushing and pulling; and reaching overhead.

(R. 19, 23). The ALJ further limited Black slightly in her "ability to feel, finger, and grasp" and determined that she "would need to avoid cold, damp environments; rough, uneven surfaces; unprotected heights; and fast and dangerous machinery." *Id*. Finally, the ALJ noted that Black would require low noise and light environments; and due to her depression, anxiety, panic attacks, personality disorder and history of substance abuse, she would be limited to "simple, routine, repetitive type work activity" and slightly limited in contact with the public, coworkers and supervisors. *Id*. While the ALJ found that Black could no longer perform her past relevant work, he found that Black could perform a wide range of light work activities, specifically, those of office cleaner, production assembly, and machine operator. (R. 22-24). The ALJ thus concluded that Black was not disabled under the Social Security Act at any time through the date of the decision. (R. 22-24).

**Review**

Claimant asserts that the ALJ erred: (1) in failing to find that Black's obesity and migraine headaches were severe impairments; (2) in finding that none of her impairments individually or in combination met or medically equaled a listed impairment; (3) in finding Black's testimony regarding her limitations not totally credible; and (4) improperly finding that Black could perform work that exists in significant numbers in the national economy.

Black contends that the ALJ erred at Steps Two and Three of the evaluative process in failing to consider her migraine headaches and obesity as severe impairments. The Commissioner points out that the ALJ did consider Black's migraine headaches a severe impairment. (R. 17, 22-23). In her reply, Black concedes that she was mistaken. She, however, contends that the ALJ did fail to consider her obesity either as a disabling condition or as a factor which contributed to her back pain and shortness of breath.

Social Security Ruling 00-3p reiterates that although Listing §9.09 on obesity has been deleted, obesity must still be considered in evaluating a claimant's disability:

> The [revised listings] state that we consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

SSR 00-3p. The clinical impression of consulting examiner, Dr. Owoso, was that Black was "moderately obese." (R. 18, 154). Although the ALJ cited this finding, he failed to consider

Black's obesity in determining whether it was a severe impairment or whether it exacerbated Black's other impairments.

Black also objects that the ALJ failed to explain his reasoning in finding that her severe impairments did not meet or equal a listed impairment at Step Three. The Commissioner counters that the ALJ's discussion is adequate and, other than discussing the Paragraph B domains of the mental impairments in Listings 12.04, 12.06 and 12.08, Black has not alleged which listed impairments are met or how her ability to work is limited by her symptoms.

At step three of the sequential evaluation process, a claimant's impairment is compared to the Listings, 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the impairment is equal or medically equivalent to an impairment in the listings, the claimant is presumed disabled. A claimant has the burden of proving that a listing has been equaled or met. *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir.1988). In his decision, the ALJ is "required to discuss the evidence and explain why he found that [the claimant] was not disabled at step three." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)(finding that the ALJ's bare conclusion that the claimant's impairments did not meet a listing with no discussion of the relevant listings or his reasons for this conclusion prevented meaningful review).

The Court finds the ALJ's discussion at Step Three lacking. Although the ALJ stated that he considered all the evidence and that he "carefully compared the claimant's signs, symptoms, and laboratory findings with the criteria specified in all of the Listings of Impairments" with

> specific emphasis upon Listing 1.02, pertaining to major dysfunction of a joint(s) (due to any cause); Listing 1.04, pertaining to disorders of the spine; Listing 3.02, pertaining to chronic pulmonary insufficiency; Listing 7.02, pertaining to chronic anemia; Listing 12.04, pertaining to affective disorders; Listing 12.06, pertaining

10

>    to anxiety-related disorders; Listing 12.08, pertaining to personality disorders;
>    and Listing 12.09 pertaining to substance addiction disorders,

he did not discuss the evidence or explain why he found that Black's impairments did not meet or equal any of these listed impairments either individually or in combination. *Clifton*, 79 F.3d at 1009; *see also Dye v. Barnhart*, 2006 WL 1230690 (10th Cir. 2006) (finding that ALJ's statement - "Although the claimant [ ] has a noted heart impairment, the requirements for disability under Sections 4.01 through 4.12 are not met" - was too conclusory and therefore beyond meaningful review). On remand, the ALJ should expand his discussion at Step Three, comparing Black's severe impairments to the relevant Listings and explaining the evidence upon which he relies in making his determination at that Step.

In making his Step Three determination on remand, the ALJ should correct his finding that there was "no evidence that the claimant has had episodes of deterioration or decompensation." (R. 21). It is clear from the medical records that Black was hospitalized for a drug overdose in November 2002. (R. 146-48). Further, examining psychologist, Dr. Morgan, noted that Black "reported signs and symptoms consistent with borderline personality disorder, including unstable self-image, dangerously impulsive behaviors, *recurrent suicidal behavior*, self-mutilating behavior, affective instability, chronic feelings of emptiness, inappropriate and intense anger, and transient, stress-related paranoid ideation." (R. 162) (emphasis added). Dr. Morgan also reported that "[Black] denied suicidal or homicidal intent; however she indicated two previous suicide attempts. When pressed about hospitalizations for 'manic behavior,' she admitted to overdosing on her medications and later to several earlier suicidal threats and gestures as well as self-mutilating by cutting on her wrist." *Id*. Finally, the DDS consulting psychologists noted that Black had had one or two episodes of decompensation of extended

duration. In short, there is evidence that Black has had episodes of deterioration and decompensation.

In addition, the ALJ's stated bases for finding that Black had only slight restrictions of her ADLs and moderate difficulties with social functioning are insufficient. Regarding her ADLs, the ALJ concluded that Black was only slightly restricted based on the following:

> The record reflects that the claimant has only slight restrictions of activities of daily living. The claimant testified at the October 26, 2004, hearing that she did not do the dishes, did not dust the furniture, sweep or mop the floors, vacuum, make the bed, do the laundry, cook, or shop, but told Dr. Morgan that she took care of all of her personal grooming needs, and performed all of the necessary household chores, including cleaning, shopping, and cooking.

(R. 20). If the ALJ meant the Court to infer from this that Black's testimony at the hearing was not credible, the Court declines to do so. The ALJ should clearly state the basis for his findings and consider that Black's impairments may have intensified from June 25, 2003 when she was examined by Dr. Morgan and October 26, 2004, the date of the hearing. *Hayden v. Barnhart*, 374 F.3d 986, 993-94 (10th Cir. 2004) (noting that symptoms may worsen or improve with time and refusing to infer that claimant was exaggerating her symptoms). Regarding the ALJ's assessment of her social functioning, the ALJ found that she had "moderate difficulties with social functioning in that she has related that she does not have any friends with whom she shares social functioning, and related to Dr. Morgan that she watched her children in her free time." (R. 20). This, without more, can as easily support a finding of marked or extreme difficulty in social functioning.

As the Court finds that the case should be remanded for a Step Three determination, the Court does not reach the other bases of error.[6] For the above reasons, the Court REVERSES and REMANDS for further proceedings consistent with this opinion.

DATED this 26th day of May, 2006.

_____
Paul J. Cleary
United States Magistrate Judge

---

[6] Should the ALJ, on reconsideration, reach Step Five, it would be helpful if the ALJ clarified any "low noise, low light" restriction placed on alternative work.